*In re* REBECCA JONES, a/k/a Bekki Keene Kennedy, a Person Found Subject to Administration of Medication (The People of the State of Illinois, Petitioner-Appellee, v. Rebecca Jones, a/k/a Bekki Keene Kennedy, Respondent-Appellant).

Third District    No. 3—96—0178

Opinion filed November 26, 1996.

Cynthia Z. Tracy (argued), of Guardianship & Advocacy Commission, of Peoria, and Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and J. Paul Hoffmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MICHELA delivered the opinion of the court:

The petitioner-appellee, the State, filed a petition to involuntarily administer psychotropic medication to the respondent-appellant, Rebecca Jones, a/k/a Bekki Keene Kennedy (Jones). The trial court granted the petition, finding that Jones suffered from a serious mental illness and that the State satisfied the requirements of section 2—107.1 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/2—107.1 (West 1994)). Jones appeals arguing, *inter alia*, the State failed to present clear and convincing evidence in support of its petition. We agree and reverse.

The limited record in this case reveals the following pertinent facts. Jones was residing in the Danville area when the local police served her with eviction papers at her apartment. The officers

believed that Jones was acting in a bizarre manner and not taking care of her needs. Thus, they transported her to Good Samaritan Hospital for observation. She was admitted there and subsequently committed for a period of 180 days. It was reported that she refused to comply with treatment and that the hospital staff was unable to handle her. Thus, she was transferred to Zeller Mental Health Center on January 24, 1996.

On January 30, 1996, the State filed a petition to administer psychotropic medication to Jones. The trial court set the hearing for January 31, 1996, required notice be sent to appropriate parties, and appointed counsel to represent Jones. Jones was personally served with notice on January 31, 1996. Both she and her counsel were present at the hearing on January 31, 1996. Her counsel did not object to the timeliness of the notice nor did he make a showing as to any prejudice his client would suffer from such short notice.

The State called Dr. Pratap Attaluri, a psychiatrist at Zeller, as its only witness in the case. Dr. Attaluri stated he was assigned as the treating physician for Jones in this matter. He examined Jones on January 24, 1996, and found her to be loud, disruptive and delusional. According to Dr. Attaluri, Jones believes her name is Mrs. Kennedy and that she has been married to John F. Kennedy, Jr. She also believes she is a Federal Bureau of Investigation agent involved in the Waco incident. Further, Jones told Dr. Attaluri that she could not take medication because it would adversely affect her multiple cancers. From this, Dr. Attaluri testified that Jones had no insight and impaired judgment.

Dr. Attaluri diagnosed Jones as suffering from personality changes secondary to a general medical condition, specifically, a head injury. Dr. Attaluri believed that a head injury which occurred 30 years ago was the cause of Jones' mental illness. Dr. Attaluri prescribed Depakote, Haldol and Cogentin to treat Jones' mental illness. However, Dr. Attaluri stated that Jones refused the medication in fear of an allergic reaction. Dr. Attaluri testified that Jones was administered similar medication at Danville but then refused the medication because she complained of unpleasant side effects. According to Dr. Attaluri, there are potential side effects to these medications, such as tremors, rigidity and dryness of the mouth, but that such side effects could be controlled through the administration of companion medications. Further, Jones would be closely monitored for any physical reaction to the medication.

The following testimony completed Dr. Attaluri's direct examination:

"Q. Would it be your medical judgment that the possible benefits

of the medication would outweigh any of the potential physical side effects of the medication?

A. Yes, I do believe that.

Q. Does the patient have the ability to make a reasoned decision in regards to taking the medication in your judgment at this time?

A. No.

Q. Is there any less intrusive means of treating the patient at this time?

A. Not at this time."

Jones testified that she did not want to take this medication because she had doctor's orders not to because it would kill her. She stated she experienced seven hours of trauma at Danville when medication was forced upon her. She offered no other cogent testimony as to either her illness or her desire to refuse medical treatment.

The trial court then granted the petition and authorized Zeller to administer psychotropic medication to Jones for a period of 90 days. The trial court found that Jones suffered from a serious mental illness, that there had been a deterioration of her ability to function, that she had been loud, disruptive and delusional, and that she lacked insight, had impaired judgment and was unable to care for herself. The court further found that this illness had existed for a considerable period of time, that the benefits of administering psychotropic medication outweighed the harm, that Jones lacked capacity to make a reasoned decision about the medication, and that other less restrictive services had been found inappropriate. The trial court did not specifically utilize a "substituted judgment" approach when reaching its decision. Jones appeals.

■ On appeal, Jones first argues that her due process rights were violated procedurally because of a lack of formal notice of the hearing. In *In re C.E.*, our supreme court held that formal notice under a section 2—107.1 petition is not necessary if the recipient and his attorney received actual notice of the proceedings and were provided ample opportunity to respond to the arguments made. *In re C.E.*, 161 Ill. 2d 200, 226-27, 641 N.E.2d 345, 357 (1994). However, it is incumbent upon the recipient to demonstrate prejudice by the absence of formal notice. *In re C.E.*, 161 Ill. 2d 200, 226-27, 641 N.E.2d 345, 357 (1994). In the present case, the record reveals that both Jones and her attorney received actual notice of the proceedings. However, we find that actual notice of one day did not sufficiently afford counsel an opportunity to prepare. It was therefore incumbent upon Jones to demonstrate that she was prejudiced by the absence of formal notice. However, her attorney made no such argument to the

trial court. Short notice alone is insufficient to constitute prejudice *per se.* Since Jones did not claim she was prejudiced by the absence of formal notice, and since we are unable to find any prejudice on the present record, Jones' argument must fail. See *In re C.E.*, 161 Ill. 2d at 227, 641 N.E.2d at 357.

■ Jones next argues the trial court committed reversible error by failing to apply a "substituted judgment" standard to the matter at hand. She argues the trial court was required to give deference to her wishes to refuse psychotropic medication. Under the substituted judgment analysis, the surrogate decision maker attempts to establish, with as much accuracy as possible, what decision the patient would make if he or she were competent to do so. *In re C.E.*, 161 Ill. 2d at 220, 641 N.E.2d at 354; *In re Estate of Longeway*, 133 Ill. 2d 33, 49, 549 N.E.2d 292, 299 (1989). Thus, in the present case, our inquiry is whether Jones clearly proved that her desire to refuse psychotropic medication was competently made. *In re Israel*, 278 Ill. App. 3d 24, 34, 664 N.E.2d 1032, 1038 (1996).

■ At the hearing, the testimony of Dr. Attaluri established that Jones was suffering from a mental illness and was delusional. The evidence further indicated that Jones' objections concerning the medications were not rational. While Jones offered specific reasons for refusing the medical treatment, we find that such evidence does not render her testimony "clear" evidence of her competent wishes concerning the administration of medication. See *In re Israel*, 278 Ill. App. 3d at 34, 664 N.E.2d at 1038; *In re Schaap*, 274 Ill. App. 3d 497, 502-03, 654 N.E.2d 1084, 1087-88 (1995). Thus, we find the trial court did not err by failing to apply the "substituted judgment" test.

■ Jones finally argues the State failed to prove by clear and convincing evidence the factors required under section 2—107.1(d) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/2—107.1 (West 1994)). Section 2—107.1(d) delineates the nonemergency circumstances under which psychotropic medication may be administered against the wishes of the recipient. Section 2—107.1(d) directs that forced administration of psychotropic medication is only authorized if the court finds evidence of each of the following elements, by clear and convincing proof:

"(1) That the recipient has a serious mental illness or developmental disability.

(2) That because of said mental illness or developmental disability, the recipient exhibits deterioration of his ability to function, suffering, or threatening or disruptive behavior.

(3) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in paragraph (2) [above] or the repeated episodic occurrence of these symptoms.

(4) That the benefits of the psychotropic medication will outweigh the harm.

(5) That the recipient lacks the capacity to make a reasoned decision about the medication.

(6) That other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2—107.1(d) (West 1994).

Clear and convincing evidence is defined as the quantum of proof which leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question. *Bazydlo v. Volant*, 164 Ill. 2d 207, 647 N.E.2d 273 (1995). As a reviewing court, we give great deference to the trial court's factual findings because the court stands in the best position to weigh the credibility of all the witnesses; thus, we will disturb the trial court's decision only if it is manifestly erroneous. *In re Jeffers*, 239 Ill. App. 3d 29, 606 N.E.2d 727 (1992).

■ In the instant case, we find the State only proved by clear and convincing evidence that Jones suffered from a serious mental illness, Jones lacked capacity to make a reasoned decision and that the benefit of administering psychotropic medication outweighed its harm. There is no evidence of actual suffering, loss of ability to function or threatening behavior. The record reveals that her loud and disruptive behavior manifested itself only when she was examined and medication was forced upon her. Also, there was no evidence submitted as to what other services were explored and found inappropriate. Accordingly, we find the trial court's order to be manifestly erroneous.

For the foregoing reasons, the order of the circuit court of Peoria County is reversed.

Reversed.

HOLDRIDGE, P.J., and SLATER, J., concur.